**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MESERET GEBRE | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 24-987 |
| | : | |
| PHILADELPHIA WORKS, INC. | : | |

## MEMORANDUM

KEARNEY, J.                                                                                    August 6, 2024

An employer adopted and mandated detailed procedures on employees' communications with the employer's vendors. The employer, for example, decided vendors did not need to provide documents supporting invoices for less than $500. An African American employee joined the company to review and process vendors' invoices for the employer's payment. She understood the employer's decision. But the employee still challenged a vendor's invoice for less than $500 without supporting documents believing the employee thought the vendor violated Generally Accepted Accounting Principles. She admits making the vendor feel "attacked" by accusing the vendor of fraud and embezzlement. The vendor complained about the new employee. The employer investigated and then fired her for the exact reason of her treatment of the vendor. The employee sued for wrongful discharge, whistleblower protections, and race discrimination claiming her employer fired her because she is African American. She admitted her employer fired her because she refused to process the vendor's invoice and for no other reason. She offers no basis to find race-based discrimination. Her proffered comparator did not attack a vendor with fraud accusations contrary to policy. We grant the employer summary judgment on the race discrimination claims and decline to exercise supplemental jurisdiction over the Pennsylvania whistleblower and wrongful termination claims. The employee may choose to pursue timely Pennsylvania claims in state court.

## I. Undisputed Facts[1]

Philadelphia Works, Inc. is a non-profit organization headquartered a couple blocks from Philadelphia's City Hall "connecting employers to workforce talent and career seekers to jobs."[2] Philadelphia Works hired recent college graduate African American Meseret Gebre in September 2022 in a contract position where, after a three-month period, it could decide whether to extend Ms. Gebre an offer for full-time employment.[3] Philadelphia Works offered Ms. Gebre a full-time position as an Account Liaison after the three month period.[4] An Account Liaison is responsible for receiving and reviewing invoices from vendors, analyzing and processing invoices into an accounting software system, and communicating with vendors.[5] She reported to Director of Contracts Sharon Robinson, an African American woman, upon her hire to full-time employment.[6]

Ms. Gebre then applied for a Program Specialist position at Philadelphia Works one month into her full-time position as an Account Liaison.[7] Philadelphia Works's Director Tyrone Hampton, an African American man, interviewed Ms. Gebre for the Program Specialist position.[8] Ms. Gebre concedes the interview did not go well, she did not have the qualifications for the position, she told Director Hampton the position is not a "good fit" and she wanted to withdraw from the interview process, and the "interview ended abruptly."[9] Director Hampton believed Ms. Gebre abruptly ended the interview by hanging up on him.[10] Ms. Gebre contends the call dropped but she concedes she did not attempt to contact Director Hampton to explain the interview's abrupt ending.[11] Ms. Gebre also concedes she understands why Director Hampton found her behavior inappropriate and unprofessional.[12] Ms. Gebre continued working in her position as an Account Liaison.

*Ms. Gebre's March 2023 interaction with vendor Dimplez4Dayz.*

Philadelphia Works has "Cost Reimbursement Invoices Procedures" applicable to vendor invoices and reimbursements.[13] Philadelphia Works maintained the Procedures on a shared drive accessible to Ms. Gebre.[14] Ms. Gebre knew Philadelphia Works required her to familiarize herself and comply with the Procedures.[15]

Philadelphia Works, through the Procedures, required its vendors to submit supporting documents for invoices seeking reimbursement over $500; any invoice seeking reimbursement for less than $500 did not require supporting documents for reimbursement.[16] Philadelphia Works trains its Account Liaisons to escalate issues to management if they are concerned a vendor's submitted invoice seeks reimbursement for services it did not provide.[17]

Ms. Gebre began working with Philadelphia Works's vendor Dimplez4Dayz as its Account Liaison in March 2023.[18] Angela Richardson served as the vendor contact for Dimplez4Dayz.[19] Ms. Gebre told Ms. Richardson on March 8, 2023 Dimplez4Dayz must provide supporting documentation for line items under $500.[20] She made this statement knowing Philadelphia Works's Procedures did not require supporting documentation for invoices under $500. But Ms. Gebre believed Generally Accepted Accounting Principles ("GAAP") required supporting documentation for an invoice or line item regardless of the amount.[21] Ms. Gebre believed GAAP required supporting documentation for line items under $500 based on courses she took while an undergraduate student at Temple University.[22]

Ms. Gebre concedes Ms. Richardson felt as if Ms. Gebre "was talking to her like a child" and the call "ended with her [Ms. Richardson] feeling like I attacked her or something."[23] Ms. Richardson sent an email to Ms. Gebre and other Philadelphia Works personnel, including Ms. Gebre's supervisor Director Robinson, complaining about her March 8, 2023 call with Ms.

Gebre.[24] Ms. Richardson reported Ms. Gebre's tone "was utterly unprofessional" and requested her interactions with Philadelphia Works staff be conducted "in a respectful manner."[25] Ms. Richardson also requested a meeting to discuss the "new standard" to provide supporting documentation for items under $500.[26]

Ms. Gebre immediately responded to Ms. Richardson (without copying Director Robinson), denying an unprofessional tone and continuing to demand additional supporting documents before Ms. Gebre issued a reimbursement.[27] Ms. Richardson responded to Ms. Gebre, copying Director Robinson and other Philadelphia Works personnel, telling her she (Ms. Richardson) would not allow Ms. Gebre to characterize their discussion and would not "go back and forth on emails" and requested a meeting to discuss the "changes as they are new to us."[28]

One week later, on March 15, 2023, Ms. Gebre contacted Ms. Richardson to schedule a Teams call.[29] Ms. Richardson, copying Director Robinson, responded she had been "informed that [she] would receive a new [Account] [L]iaison."[30] Ms. Gebre, without copying Director Robinson, challenged Ms. Richardson regarding a new Account Liaison and continued to demand supporting documentation.[31] Ms. Richardson responded, copying Director Robinson, telling Ms. Gebre "this … serve[s] as my formal request not to contact me anymore!" and "moving forward [t]he organization will not be working with you."[32]

Ms. Gebre responded minutes later (without copying Director Robinson) telling Ms. Richardson "it seems like you knowingly sent [Philadelphia Works] a fraudulent invoice assuming it will be processed" and if another Account Liaison processed the invoice "knowing it's wrong – then it's embezzlement."[33]

Ms. Richardson then emailed Director Robinson and other Philadelphia Works personnel reporting feeling "harassed" by Ms. Gebre and being accused by Ms. Gebre of submitting a

fraudulent invoice as "over the top" and "[t]o be accused of fraud and embezzlement is a very hard smack in the face."[34] Director Robinson apologized to Ms. Richardson and told Ms. Gebre she reassigned Dimplez4Dayz to another Account Liaison.[35]

### *Ms. Gebre's interaction with her manager regarding another vendor in March 2023.*

Around the same time as her interaction with Ms. Richardson from Dimplez4Dayz, another vendor, Brett Shay, School Director of CareBridge Academy contacted Ms. Gebre with a question in March 2023.[36] Ms. Gebre responded to Mr. Shay by confirming receipt of the invoice and directing Philadelphia Works's Accounts Payable department to pay the invoice.[37]

Philadelphia Works Manager of Contracts Sarah Getz did not believe Ms. Gebre answered Mr. Shay's questions.[38] Manager Getz told Ms. Gebre of her concerns: first, Ms. Gebre did not answer  Mr. Shay's question and may have confused him and, second, Ms. Gebre  did not have the authority to direct the release of funds from Accounts Payable.[39] Manager Getz directed Ms. Gebre to contact Mr. Shay with corrected information and told Ms. Gebre the two would "connect via Teams about this."[40]

Ms. Gebre responded to Manager Getz, copying Director Robinson. Ms. Gebre challenged Manager Getz's instructions telling Manager Getz: she (Ms. Gebre) is "not sure what the point of this email is when I already answered [Mr. Shay's] questions"; Ms. Gebre made a mistake in the information communicated to Mr. Shay but "caught [her] mistake" and apologized to Mr. Shay; Ms. Gebre "do[es] not need to have the authority to ask [Accounts Payable]" to pay an invoice; as an employee of Philadelphia Works and of the finance team, she "should be able to communicate across the board regardless of the authority I have, or do not have. It's called collaboration" and "if you think I am not competent enough to do my job, then that's another discussion. I do not appreciate being sent emails like these when I am clearly doing my job – mistakes happen"; she

"already answered [Mr. Shay's] questions in a separate email which I will forward"; and asked to include Human Resources in future communications.[41] Ms. Gebre also refused to follow Manager Getz's directive to "reply all" in responses to emails and refused Manager's Getz's meeting invitation on Teams.[42]

Ms. Gebre conceded her telling Manager Getz "[a]s an employee of this organization and the finance team, I should be able to communicate across the board regardless of the authority I have or do not have. It's called collaboration" is inappropriate when speaking to her manager and agreed it is unprofessional.[43]

### *Philadelphia Works terminated Ms. Gebre in March 2023.*

Philadelphia Works conducted an investigation into Ms. Richardson's complaint about Ms. Gebre's conduct.[44] Ms. Gebre swore Philadelphia Works Human Resources contacted her on March 17, 2023 to tell her Ms. Richardson of Dimplez4Dayz accused her of harassment.[45] Human Resources "connected" Ms. Gebre with "the in-house lawyer to speak about [the] matter."[46]

Ms. Gebre swore she spoke with counsel for Philadelphia Works and agreed to schedule a call for March 20, 2023.[47] Ms. Gebre swore counsel for Philadelphia Works told her the call "was optional … my presence or me even talking about it was optional."[48] Ms. Gebre swore she agreed to participate in the interview with counsel for Philadelphia Works but "when [she] got on the scheduled call … [she] didn't feel comfortable speaking without a lawyer" and the call ended.[49]

Director Robinson, Philadelphia Works Controller Zachariah Hughes, and Human Resources Manager Maria Morton together made the decision to terminate Ms. Gebre's employment on March 20, 2023.[50] Director Robinson swore Ms. Gebre's disrespect to vendor Dimplez4Dayz, including accusing Ms. Richardson of fraud, and Ms. Gebre's disrespect to

Manager Getz and Director Hampton during the February 2023 interview for the Program Specialist position as the reasons for her termination.[51]

Human Resources Manager Morton provided Ms. Gebre with a March 20, 2023 memorandum terminating her employment.[52] Manager Morton did not explain the reason for termination in the memorandum.[53]

### Ms. Gebre sued Philadelphia Works in state court.

Ms. Gebre filed a charge of discrimination with the Equal Employment Opportunity Commission on May 30, 2023, dual filed with the Pennsylvania Human Relations Committee.[54] The Equal Employment Opportunity Commission issued Ms. Gebre a right-to-sue letter on December 16, 2023.[55]

Ms. Gebre sued Philadelphia Works in the Philadelphia Court of Common Pleas on February 8, 2024.[56] Ms. Gebre's claim with the Pennsylvania Human Relations Committee exhausted on May 30, 2024, one year after the filing of her dual-filed charge.

Ms. Gebre alleged Philadelphia Works terminated her on the basis of her race in violation of Title VII and the Pennsylvania Human Relations Act.[57] She alleged Philadelphia Works treated her differently than Florinda Mangulabnan, an Asian American Account Liaison, who, in October 2022, asked a vendor to remove supporting documentation not compliant with GAAP standards and who Philadelphia Works did not terminate.[58] Ms. Gebre pleaded only: Philadelphia Works treated her differently than Ms. Mangulabnan who "asked a vendor to remove supporting documentation that did not align with GAAP standards" and did not terminate Ms. Mangulabnan "for reviewing and verifying an invoice's legitimacy nor accused her of unprofessional or inappropriate behavior."[59]

Ms. Gebre swore the alleged comparator Ms. Mangulabnan told a vendor to remove supporting documentation and reduce an itemized expense line.[60] Ms. Gebre swore she did not know if Ms. Mangulabnan had a verbal confrontation with the vendor, did not know if the vendor complained about Ms. Mangulabnan's conduct to Philadelphia Works, did not know if the vendor complained Ms. Mangulabnan harassed it, did not know if the vendor accused Ms. Mangulabnan of behaving unprofessionally or inappropriately, and did not know if Ms. Mangulabnan accused the vendor of committing fraud or a crime.[61] There is no evidence Ms. Mangulabnan accused a vendor of fraud or embezzlement or acted with insubordination to her manager or supervisor.

Ms. Gebre swore her termination constitutes a "wrongful termination" and she swore the reason for her termination "is tied to a fraudulent invoice that I have received from one of the vendors that [Philadelphia Works] work closely with. And I refused to process that invoice."[62] Ms. Gebre swore no other reason for the basis of her termination, including race-based discrimination.[63]

## II.  Analysis

Ms. Gebre alleges Philadelphia Works, Inc. fired her because of her race in violation of Title VII and the Pennsylvania Human Relations Act. She also alleges Philadelphia Works fired her because she made a good faith report of "wrongdoing or waste" under the Pennsylvania Whistleblower Law and common law wrongful termination.

Philadelphia Works now moves for summary judgment.[64] It argues Ms. Gebre: (1) cannot establish a violation of Pennsylvania's Whistleblower Law; (2) cannot establish a claim for common law wrongful termination in violation of public policy; and (3) there is no evidence to support race-based discrimination.[65]

Ms. Gebre responds (1) Director Robinson exhibited more concern about "keeping [Dimplez4Dayz] happy as opposed to actually looking into Ms. Gebre's allegations" creating a fact issue on the reason for Ms. Gebre's termination in violation of the Whistleblower Law; (2) her concern with Dimplez4Dayz "get[ting] creative with policies to avoid answering simple questions" is protected activity and but for her challenging the Dimplez4Dayz invoice, Philadelphia Works would have paid the vendor "for expenses it had not incurred" making her termination wrongful in violation of public policy; and (3) different treatment of comparator Ms. Mangulabnan and Director Robinson's testimony create fact issues as to causation and pretext precluding summary judgment on the race-based discrimination claims.

Ms. Gebre asks us, alternatively, if we dismiss her race-based discrimination claims under Title VII and are considering dismissing her Pennsylvania Whistleblower Law claim, to decline to exercise supplemental jurisdiction over the state law claim and dismiss the action without prejudice to refile in state court.[66]

Ms. Gebre did not identify facts in the record to make a sufficient showing on essential elements for which she has the burden of proof on race-based discrimination claims under Title VII. We enter judgment in favor of Philadelphia Works on the Title VII claim and decline to exercise supplemental jurisdiction over the state claims.

**A.  Ms. Gebre does not adduce evidence of race-based discrimination.**

Ms. Gebre alleges Philadelphia Works terminated her because she is African American, treating similarly situated employees outside her protected class—allegedly Ms. Mangulabnan— more favorably. We find the undisputed facts do not create an issue for the jury on the Title VII race discrimination claim.

### 1.  Ms. Gebre did not adduce evidence allowing us to infer a prima facie case of race discrimination.

Ms. Gebre must first establish a prima facie case of discrimination.[67] To succeed on her disparate treatment claim under Title VII and the Pennsylvania Human Relations Act, Ms. Gebre must establish a prima facie case of discrimination by showing (1) she is a member of a protected class; (2) she is qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances "that could give rise to an inference of intentional discrimination."[68]

If Ms. Gebre establishes a prima facie case of discrimination, the burden shifts to Philadelphia Works to articulate a legitimate, non-discriminatory reason for termination.[69] If Philadelphia Works provides a legitimate, non-discriminatory reason for Ms. Gebre's termination, the burden shifts back to her to show the proffered reason is pretext for intentional discrimination.[70]

To show pretext, Ms. Gebre "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve [Philadelphia Works's] articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [Philadelphia Works's] action."[71] Our Court of Appeals instructs Ms. Gebre "can satisfy the second prong [of the *Fuentes* pretext showing] by demonstrating, among other things, that 'the employer treated other, similarly situated persons not of [her] protected class more favorably.'"[72]

#### *There is no evidence to support the causation element of the prima facie case.*

Philadelphia Works first argues Ms. Gebre cannot meet the fourth element of the prima facie case of race-based discrimination because there is no evidence of a causal link between her race and her termination.[73]

To support an inference of intentional discrimination, our Court of Appeals instructs an employee "generally must present evidence that the employer treated a similarly situated employee who was not a member of the plaintiff's protected class more favorably."[74] We are instructed our "central focus of the prima facie case is always whether the employer is treating some people less favorably than others because of their race …."[75] This involves a comparison of "similarly situated" employees determined by job duties, supervisors, and "the nature of the misconduct."[76]

Philadelphia Works first argues Ms. Gebre cannot establish the causation element of the prima facie case because she does not attribute a connection between her race and termination and swears to the contrary:

> Q. What do you think the reason is that Philadelphia Works terminated your employment?
>
> A. I would say it was wrongful termination. I believe the reason is tied to a fraudulent invoice that I have received from one of the vendors that they work closely with. And I refused to process that invoice.
>
> Q. Any other reason?
>
> A. No.
>
> Q. Okay.
>
> A. Not to my knowledge.[77]

Philadelphia Works next argues Ms. Gebre's discrimination claim is based solely on the alleged different treatment of Ms. Mangulabnan who is not a proper comparator.

Ms. Gebre concedes she did not identify race as a basis for her termination.[78] She argues her awareness of being discriminated on the basis of race is a "conclusion of law" and is not an element of a race-based discrimination claim.[79] But Ms. Gebre now has the burden of establishing a prima facie case of discrimination; she has to point to some evidence her termination occurred under circumstances "that could give rise to an inference of intentional discrimination." And the

point here is Ms. Gebre herself did not point to evidence which could give rise to an inference of intentional discrimination; she did not identify race as the reason for her termination at her deposition when she had the chance to back up her claim of race-based discrimination, sinking the causation element of the prima facie case. But even if we ignored Ms. Gebre's testimony, we cannot find causation based on the only argument Ms. Gebre puts forward: Philadelphia Works did not discipline Ms. Mangulabnan, an Asian American  Account Liaison, "for similar misconduct."[80] Ms. Gebre asserts Ms. Mangulabnan "asked a vendor to remove supporting documentation that did not align with GAAP standards" and Philadelphia Works did not terminate Ms. Mangulabnan "for reviewing and verifying and invoice's legitimacy nor accused her of unprofessional or inappropriate behavior."[81]

But her argument misses the issue; she is mixing apples and oranges because the record shows Philadelphia Works terminated Ms. Gebre for, among other reasons, being disrespectful to Ms. Richardson from Dimplez4Dayz by accusing her of fraud. There is no dispute Ms. Gebre accused Ms. Richardson of fraud and embezzlement causing Ms. Richardson to contact Director Robinson to report feeling harassed by Ms. Gebre and refused to work with Ms. Gebre. There is no evidence Ms. Mangulabnan conducted herself in the same manner. Ms. Gebre does not know if Ms. Mangulabnan had a verbal confrontation with the vendor or whether a vendor complained about Ms. Mangulabnan, including harassment, unprofessional, or inappropriate behavior, and does not know Ms. Mangulabnan accused a vendor of committing fraud or a crime. She offers no evidence suggesting similar conduct.

Ms. Gebre, at the summary judgment stage, cannot escape her burden of showing a causal connection between her race and termination. She provides no evidence Ms. Mangulabnan accused a vendor of fraud and embezzlement which Philadelphia Works ignored. She instead attempts to

refocus the reason for her termination as asking a vendor "to remove supporting documentation" provided for a different reporting period. But that is not the reason for Ms. Gebre's termination. The undisputed evidence confirms Philadelphia Works terminated Ms. Gebre for the "exact reason" of "her mistreatment of [..]vendor during March 2023 and refusal to constructively discuss the situation."[82] Director Robinson swore her understanding of Philadelphia Works's terminating Ms. Gebre is based on her being "very disrespectful to our providers – two providers. She was disrespectful to my manager, Sarah Getz. She was disrespectful to a fellow director, who she applied for another position."[83] No one mentions or points to race as a factor.  The stated reasons are consistent.  Ms. Gebre's attempt to cast this as a credibility determination based on an "exact" reason for termination compared to Director Robinson's understanding is entirely without merit. There is no credibility gap.

Ms. Gebre's theory is left with a reach on race.  But she has no comparator outside her protected class with similar behavior towards a manager or supervisor and who Philadelphia Works did not terminate.

Ms. Gebre failed to establish the fourth element of the prima facie case of race-based discrimination.

### 2.  Ms. Gebre did not adduce evidence of pretext even if she could show a prima facie case.

But even if Ms. Gebre established a prima facie case, she cannot show the legitimate, non-discriminatory reason for her termination is a pretext. Ms. Gebre argues Philadelphia Works's reason for termination are "related to character analysis" attacking her credibility while bolstering the credibility of its own witnesses' self-serving statements.[84] Ms. Gebre also asserts Philadelphia Works has, after her March 20, 2023 termination, "shifting and expanding explanations" for her

termination and "appears to contradict itself as to who was the decision-maker related to [her] termination."[85]

Ms. Gebre points out the termination letter from Human Resources Manager Morton did not state a reason for termination while Philadelphia Works's responses to interrogatories identified the mistreatment of Dimplez4Dayz as the reason for termination. Ms. Gebre also argues Philadelphia Works's responses to interrogatories identified Director Robinson as the final decisionmaker but Ms. Robinson could not identify the final decisionmaker at her deposition. All of this, argues Ms. Gebre, creates "holes and inconsistences" in the reason for her termination calling credibility into question for a jury to decide.

We disagree. Ms. Gebre must show pretext. She must point to some evidence from which a jury could ***reasonably*** either disbelieve Philadelphia Works's reasons for termination or believe an "invidious discriminatory reason" is more likely than not the motivating or determinative cause of Ms. Gebre's termination. She offers no evidence to create a fact issue on pretext. There is nothing in the record to dispute Director Robinson's sworn testimony she, Controller Hughes, and Human Resources Manager Morton together agreed to terminate Ms. Gebre's employment for her conduct with regard to Dimplez4Dayz, Manager Getz, and Director Hampton. Director Robinson's response she "didn't know" the "approval authority" for the decision does not create a fact issue. She testified "we were all in agreement" regarding termination and the reasons for termination. There is no evidence otherwise. Ms. Gebre did not meet her burden on summary judgment. We enter judgment in favor of Philadelphia Works on the race-based discrimination claims.

## B. We decline to exercise supplemental jurisdiction over Ms. Gebre's state law claims.

We may decline to exercise supplemental jurisdiction over state law claims under 28 U.S.C. § 1367(c).[86] Our Court of Appeals directs "where the claim over which the district court has

original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."[87] As Judge Wolson recently noted, our Court of Appeals's decision in *Hedges*, "creates a presumption that a court will decline to exercise supplemental jurisdiction once it disposes of all federal claims, unless the case is an unusual one."[88]

We cannot find judicial economy, convenience, or fairness justify our exercise of supplemental jurisdiction over the Pennsylvania whistleblower and wrongful discharge claims. Ms. Gebre filed her complaint in state court six months ago. She can conveniently and pursue state law claims in her chosen forum.[89] And Ms. Gebre asked us, in the alternative, if we entered judgment in favor of Philadelphia Works on the Title VII discrimination claims, to decline the exercise of supplemental jurisdiction and dismiss her state law claims without prejudice to refile in state court.[90] Philadelphia Works is prepared to defend these claims in its home county.

We find no basis to justify our retaining supplemental jurisdiction over Ms. Gebre's Pennsylvania Whistleblower Law and common law wrongful discharge claims. We decline to exercise jurisdiction over the remaining state law claims and dismiss them without prejudice.

## III.   Conclusion

Ms. Gebre did not adduce evidence of race-based discrimination leading to Philadelphia Works's decision to terminate her. The evidence does not suggest, let alone allow us to plausibly infer, race played a role in the March 2023 decision. We afforded her ample discovery. She cannot cite a genuine issue of material fact necessary for the jury's resolution. She swore her employer fired her as a whistleblower; she did not mention race. Arguing the jury must decide who is telling the truth does not in this case suffice without some evidence.

We grant summary judgment dismissing the race-based discrimination claim with prejudice. We decline to exercise supplemental jurisdiction allowing Ms. Gebre to file suit in state court raising timely claims under Pennsylvania law.

---

[1] Our Policies require parties moving for relief under Fed. R. Civ. P. 56 include a Statement of Undisputed Material Facts ("SUMF") and an appendix to support summary judgment. Philadelphia Works filed its Motion, SUMF, Memorandum in support of summary judgment, and Appendix at ECF No. 18. Ms. Gebre filed a Memorandum in opposition to summary judgment, a response to Philadelphia Works' SUMF, and a supplemental Appendix at ECF No. 19.

[2] ECF No. 18-1, Philadelphia Works SUMF ¶ 1; https://philaworks.org

[3] ECF No. 18-1, Philadelphia Works SUMF ¶¶ 2, 5.

[4] *Id.*, Philadelphia Works SUMF ¶ 6.

[5] *Id.*, Philadelphia Works SUMF ¶ 4.

[6] *Id.*, Philadelphia Works SUMF ¶¶ 7-11.

[7] *Id.*, Philadelphia Works SUMF ¶ 56.

[8] *Id.*, Philadelphia Works SUMF ¶ 57.

[9] *Id.*, Philadelphia Works SUMF ¶¶ 55-60.

[10] *Id.*, Philadelphia Works SUMF ¶ 59.

[11] ECF No. 19-2, Gebre SUMF ¶¶ 59-60.

[12] ECF No. 18-1, Philadelphia Works SUMF ¶ 60; ECF No. 18-2, Appendix 41a, Gebre N.T. 106-109:1-13.

[13] ECF No. 18-1, Philadelphia Works SUMF ¶ 16.

[14] *Id.*, Philadelphia Works SUMF ¶ 18.

[15] *Id.*, Philadelphia Works SUMF ¶ 19.

[16] *Id.*, Philadelphia Works SUMF ¶ 20; ECF No. 18-2, Appendix 84a. The Cost Reimbursement Invoices Procedures provides: "Supporting documentation is **ONLY** required for any line item

that is **$500.00 or more**. Example: If provider is invoicing for **$400.00** for Telephone, then **NO** support is needed." *Id.* (emphasis in original).

[17] ECF No. 18-1, Philadelphia Works SUMF ¶ 21. Ms. Gebre admits her supervisor Director Robinson swore Account Liaisons are trained to escalate concerns about vendor invoices to management. ECF No. 19-2, Gebre SUMF ¶ 21. But she disputes "[w]hether such training actually occurred," citing Director Robinson's credibility to be determined by a jury. *Id.* This is insufficient at the summary judgment stage. Summary judgment is "put up or shut up time." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). Discovery is over. Ms. Gebre must point to some evidence in the record creating a genuine issue of material fact she did not receive training. She did not do so. There is nothing in the record to dispute Director Robinson's testimony; to the contrary, Ms. Gebre swore she received one to two months of training when she first began working at Philadelphia Works. ECF No. 18-2, Appendix 26a-27a, Gebre N.T. 49:19-25, 50:1-18.

[18] ECF No. 18-1, Philadelphia Works SUMF ¶ 22.

[19] *Id.* ¶ 26.

[20] *Id.*

[21] *Id.* ¶¶ 26-28.

[22] ECF No. 19-2, Gebre SUMF ¶ 28.

[23] *Id.*, Gebre SUMF ¶ 35; ECF No. 18-2, Appendix 44a-45a, Gebre N.T. 121:2-25, 122:1-15.

[24] ECF No. 18-2, Appendix 108a-109a.

[25] *Id.*

[26] *Id.*, Appendix 108a.

[27] *Id.*, Appendix 107a.

[28] ECF No. 18-1, Philadelphia Works SUMF ¶ 35; ECF No. 18-2, Appendix 107a

[29] ECF No. 18-2, Appendix 106a.

[30] *Id.*

[31] *Id.*, Appendix 105a; ECF No. 18-1, Philadelphia Works SUMF ¶¶ 37-44.

[32] ECF No. 18-2, Appendix 104a.

[33] *Id.,* Appendix 103a.

---

[34] *Id.*, Appendix 102a-103a.

[35] *Id.*, Appendix 95a, 101a.

[36] ECF No. 18-1, Philadelphia Works SUMF ¶ 51; ECF No. 18-2, Appendix 90a.

[37] ECF No. 18-2, Appendix 89a-90a.

[38] ECF No. 18-2, Appendix 88a. Director Robinson supervised Manager Getz who in turn supervised Ms. Gebre. *Id.*, Appendix 72a, Robinson N.T. 19:11-24.

[39] ECF No. 18-2, Appendix 88a

[40] *Id.*

[41] *Id.*, Appendix 87a.

[42] *Id.*, Appendix 86a.

[43] ECF No. 19-2, Gebre SUMF ¶ 54.

[44] ECF No. 18-1, Philadelphia Works SUMF ¶ 47.

[45] ECF No. 19-2, Gebre SUMF ¶ 47; ECF No. 18-2, Appendix 55a, Gebre N.T. 165:4-16.

[46] ECF No. 19-2, Gebre SUMF ¶ 47; ECF No. 18-2, Appendix 55a, Gebre N.T. 165:15-16.

[47] ECF No. 19-2, Gebre SUMF ¶ 48; ECF No. 18-2, Appendix 55a, Gebre N.T. 165:17-24.

[48] *Id.*

[49] ECF No. 19-2, Gebre SUMF ¶ 48; ECF No. 18-2, Appendix 55a-56a, Gebre N.T. 165:25, 166:1-20.

[50] ECF No. 18-1, Philadelphia Works SUMF ¶ 62.

[51] ECF No. 18-2, Appendix 73a-74a, Robinson N.T. 23–29.

[52] ECF No. 19-3, Appendix 122a.

[53] *Id.*

[54] ECF No. 1-1, Complaint ¶ 12. Neither party included Ms. Gebre's charge with the Equal Employment Opportunity Commission in the summary judgment appendix.

[55] *Id.*, Complaint ¶ 15.

---

[56] Ms. Gebre brought her state court action by filing a writ of summons against Philadelphia Works on November 20, 2023. ECF No. 1 ¶ 1. She filed a Complaint in state court on February 8, 2024 alleging race-based discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 and state law claims. *Id.* ¶ 3. Philadelphia Works removed invoking our federal question jurisdiction on March 7, 2024. *Id.* The date Ms. Gebre filed her state court complaint is key to the timeliness of her Pennsylvania Whistleblower Law claim.

[57] Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*

[58] ECF No. 1-1, Complaint ¶¶ 54-56.

[59] *Id.*

[60] ECF No. 18-2, Appendix 33a, Gebre N.T. 76:22-25, 77:1-16.

[61] *Id.*, Appendix 33a-34a, Gebre N.T. 77:17-25, 78:1-25, 79:1-2.

[62] ECF No. 18-2, Appendix 18a, Gebre N.T. 14:2-8.

[63] *Id.*, Appendix 18a, Gebre N.T. 14:2-15.

[64] Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). "Summary judgment is appropriate only if, after drawing all reasonable inferences in favor of the non-moving party, there exists 'no genuine dispute as to any material fact' and the movant 'is entitled to judgment as a matter of law.'" *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 469 (3d Cir. 2021) (quoting *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 770 (3d Cir. 2018)). We do not weigh evidence or make credibility determinations. *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (quoting *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019)). "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Id.* (citing *Celotex*, 477 U.S. at 322–23).

[65] ECF No. 18.

---

[66] ECF No. 19-1 at 12.

[67] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

[68] *Qin v. Vertex, Inc.*, 100 F.4th 458, 473 (3d Cir. 2024) (quoting *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008)). We analyze discrimination claims under the PHRA "coextensively with Title VII claims." *Id.* at 470, n. 2 (quoting *Atkinson v. Lafayette Coll.*, 460 F.3d 447, 454 n. 6 (3d Cir. 2006)).

[69] *Qin*, 100 F.4th at 474 (citing *Makky*, 541 F.3d at 214).

[70] *Id.*

[71] *Id.* at 474–75 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).

[72] *Id.* at 475 (quoting *Fuentes*, 32 F.3d at 765).

[73] Philadelphia Works does not challenge the first three elements of a prima facie case.

[74] *LeCadre v. Attorney Gen. Pennsylvania*, No. 23-2898, 2024 WL 2763829, at *2 (3d Cir. May 30, 2024) (citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 413 (3d Cir. 1999)).

[75] *Id.* (quoting *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003)).

[76] *Id.*

[77] ECF No. 18-2, Appendix 18a, Gebre N.T. 14:2-12.

[78] ECF No. 19-2, Gebre SUMF ¶¶ 63, 64.

[79] *Id.*, Gebre SUMF ¶ 63.

[80] ECF No. 19-1 at 6.

[81] *Id.* (citing Ms. Gebre's answers to interrogatories ¶ 12, ECF No. 18-2, Appendix 116a-117a).

[82] ECF No. 19-3, Appendix 127a, Philadelphia Works answers to interrogatories ¶ 6.

[83] ECF 18-2, Appendix 73a, N.T. Robinson 25:14-22.

[84] ECF No. 19-1 at 7-8.

[85] *Id.* at 8.

[86] We may "decline to exercise supplemental jurisdiction over a claim … if-- … (3) the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

---

[87] *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis in original) (quoting *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

[88] *Rogers v. Montgomery Cnty.*, No. 19-4921, 2021 WL 1853530, at *2 (E.D. Pa. May 10, 2021).

[89] Ms. Gebre's claim under Pennsylvania's Whistleblower Law is likely barred by the statute of limitations. A civil action for violation of the Whistleblower Law must be brought within 180-days "after the occurrence of the alleged violation." 43 P.S. § 1424(a). The 180-day limitations period is "mandatory and must be strictly applied." *Brown v. Montgomery Cnty.*, 470 F. App'x 87, 89-90 (3d Cir. 2012) (citations omitted). Ms. Gebre alleged Philadelphia Works terminated her on March 20, 2023. The statute required her to file a complaint within 180-days ending on September 16, 2023. Because September 16, 2023 landed on a Saturday, Ms. Gebre had until Monday, September 18, 2023 to bring a claim under the Whistleblower Law. She did not do so until two months later when she sued Philadelphia Works in state court on November 20, 2023 by writ of summons followed by a complaint on February 8, 2024. Ms. Gebre's May 30, 2023 charge with the Equal Employment Opportunity Commission dual filed with the Pennsylvania Human Relations Committee did not toll the statute of limitations under the Whistleblower Law. *See Cooper v. Pa. Human Relations Comm'n*, 578 F. Supp. 3d 649, 670 (M.D. Pa. 2022) (collecting cases). Philadelphia Works asserted a statute of limitations defense in its Answer. *See* ECF No. 6. We struck the defense without prejudice because its counsel could not then articulate a Rule 11 basis for its statute of limitations argument during our Rule 16 conference. *See* ECF No. 12. It then never moved to amend its answer to assert a statute of limitations defense. We expect experienced counsel can avoid duplicative efforts on this claim.

[90] ECF No. 19-1 at 12.